Thomas TOLAR, et ux.

v.

McMORAN OFFSHORE PRODUCTION CO., et al.

Civ. A. No. 85–2651 "L".

United States District Court,
W.D. Louisiana,
Lafayette–Opelousas Division.

June 15, 1987.

Jerry J. Falgoust, Opelousas, La., for plaintiff.

George Robinson, Jr. and Mark Lowe, Lafayette, La., for defendant, McMoran Offshore.

Ralph E. Smith, New Orleans, La., for defendant, Petro–Marine Engineering.

Leon Aucoin, Metairie, La., for defendant, First Horizon Ins.

James Brown, New Orleans, La., for defendant, Production and Reliance.

Christopher L. Zaunbrecher, Lafayette, La., for intervenors Production Management and Reliance Ins.

## MEMORANDUM RULING

DUHE, District Judge.

This ruling consolidates motions for summary judgment or partial summary judgment filed by defendant McMoran Offshore Production Company ("McMoran"), third-party defendant First Horizon Insurance Company ("First Horizon") and third-party defendants Production Management Corporation ("PMC") and Reliance Insurance Company of Illinois ("RIC"). For the reasons outlined below, the motions are granted.

FACTS

Thomas Tolar was employed by PMC and worked on High Island A–471A, a fixed drilling platform on the outer continental shelf ("OCS"). On December 30, 1984 Mr. Tolar allegedly suffered injuries when he fell from a ladder leading from the crane access platform to the crane itself. Mr. Tolar seeks damages in negligence and strict liability from the platform owner, McMoran. Mrs. Tolar seeks damages for loss of consortium.

Plaintiffs subsequently amended their complaint to add defendant Petro–Marine Engineering, Inc. ("Petro–Marine") alleging that the crane and all of its equipment, machinery, ladder and appurtenances were designed, assembled, manufactured and/or maintained by Petro–Marine among others. The amendment reiterated plaintiffs' allegations of negligence and strict and/or absolute liability against all defendants and added the failure to provide Mr. Tolar a safe place to work. Plaintiffs also added a claim for punitive damages against McMoran for gross negligence and willful misconduct.

Petro–Marine subsequently filed a third-party complaint against First Horizon based upon an insurance policy allegedly in full force and effect at the time of the alleged accident. The third-party complaint alleges Petro–Marine tendered the Tolar suit but First Horizon declined to defend or indemnify. First Horizon's answer acknowledged the policy and denied that it received timely notice of the claim.

Sometime later, McMoran also filed a third-party complaint against PMC and RIC alleging that at the time of the alleged accident, there was in full force and effect a contract between McMoran and PMC requiring PMC to indemnify and hold McMoran harmless for claims such as that of the plaintiff. Further, third-party McMoran alleged the contract required PMC to obtain insurance coverage and on information and belief alleged such coverage was obtained from RIC. McMoran asserts it tendered

the Tolar claim to PMC and RIC but both have failed to provide a defense or indemnity. McMoran also pleaded PMC's breach of contract for failing to operate the platform safely and report all hazards. Third-party defendants answered by admitting the contract of insurance but denied negligence on the part of anyone for whom they are responsible. Furthermore, PMC and RIC assert McMoran's claims are barred by both Texas and Louisiana law.

## LAW AND ANALYSIS

### A. *First Horizon's Motion for Summary Judgment*

■ First Horizon contends, on its behalf and on behalf of Petro–Marine, there is no question of fact as to Petro–Marine's liability. First Horizon relies on deposition testimony by three McMoran employees to demonstrate that Petro–Marine did not manufacture, design, fabricate, install or maintain the ladder from which plaintiff allegedly fell. The affidavit of Petro–Marine Engineering President, Edmond Genois, is also submitted averring that Petro–Marine is in no way connected with the ladder in question and that no Petro–Marine employees were on the platform at the time of the accident.

Plaintiff's opposition argues answers to interrogatories propounded to McMoran disclose a factual dispute regarding the ladder. Specifically, when McMoran was asked to name the person or company that designed or assembled any part of the ladder leading from the crane access platform to the crane at the time of the accident, McMoran responded Petro–Marine Engineering. In response, Petro–Marine notes the interrogatory answers were prepared in December, 1985, long before plaintiff specified the ladder from which he fell and long before the deposition testimony clarified that Petro–Marine did not design the ladder.

This court previously denied Petro–Marine's motion for summary judgment, asking that the three depositions be filed into the record. Petro–Marine has done so and now reurges the appropriateness of its motion. In the interim, plaintiff has introduced no further evidence contradicting the facts as presented by First Horizon nor has any other party opposed the motion. In contrast, First Horizon supplemented its motion with the deposition of Donald Kennedy, a PMC employee.

Mr. Kennedy's deposition indicates the ladder at issue here was on the crane when PMC first arrived to install the crane access platform and was not altered. Steve Walton, McMoran manager of facilities engineering, testified by deposition that Petro–Marine did not have responsibility for designing the ladder in question here. Likewise, John Hickman, McMoran operations coordinator, testified by deposition that the crane access platform was fabricated by Tideland Petroleum Services and installed by PMC. Finally, Robin Mingo, McMoran manager of operations engineering, testified in his deposition that PMC contracted to inspect and maintain the ladders from the crane access platform to the crane and that PMC installed the ladder from which plaintiff fell.

First Horizon admits and this court acknowledges that the deposition testimony relied upon by movant does not establish with certainty exactly who fabricated and installed the ladder in question, but all indicate it was an entity other than Petro–Marine. Accordingly, First Horizon's motion for summary judgment seeking dismissal of plaintiff's claim against Petro–Marine is granted pursuant to Fed.R.Civ.P. 56(c). *See Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1192 (5th Cir.1986).

### B. *Motions for Partial Summary Judgment filed by Third–Party Defendants PMC and RIC and by McMoran as Defendant and Third–Party Plaintiff*

■ PMC and RIC filed their motion for partial summary judgment as third-party defendants in McMoran's third-party claim for contractual and tort indemnity and/or contribution. McMoran later joined in the motion and filed its own motion for partial summary judgment seeking dismissal of plaintiffs' strict liability claim against it. Because both address the same issue, this court will address the motions simulta-

neously. All movants argue plaintiffs cannot state a claim for relief against McMoran as a platform owner based upon strict premises or products liability.

Both motions contend it is beyond dispute that the accident allegedly occurred on an OCS oil platform offshore Texas. Movants conclude Texas law applies as surrogate federal law under the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1333(a)(2)(A). Furthermore, all agree Texas jurisprudence does not recognize a cause of action for strict premises liability like that under La.Civ.Code arts. 2317 and 2322. Rather, movants contend Texas law regarding premises liability applies a negligence standard with the landowner's duty depending upon the plaintiff's status as licensee, invitee or trespasser.

McMoran concedes Mr. Tolar's status as an invitee and concurs with PMC and RIC's conclusion that partial summary judgment is appropriate as to plaintiffs' strict liability claim. McMoran concludes that if the court so finds, then the motions for partial summary judgment should be granted dismissing plaintiffs' strict liability claim and McMoran's third-party claim for indemnity based upon it.

There in no opposition to the PMC/RIC motion. Plaintiff opposes, however, McMoran's motion contending the OCSLA provisions requiring the leaseholder to maintain all places of employment free from recognized hazards, 43 U.S.C. § 1348(b)(1), as well as regulations or standards applying to unregulated hazardous working conditions enacted pursuant to 43 U.S.C. § 1347(c), place McMoran in a position of strict or absolute liability. Plaintiffs also contend strict products liability under Texas law applies to McMoran as it relates to its construction, manufacture and design of the ladder in question.

Because of the similiarities between both motions, PMC and RIC filed a reply to plaintiffs' opposition. PMC and RIC cite *Olsen v. Shell Oil Company*, 561 F.2d 1178, *rehearing den.*, 565 F.2d 163 (5th Cir.1977), as rejecting plaintiffs' suggestion that the OCSLA and the regulations promulgated thereunder serve as the vehicle for plaintiffs' cause of action in strict liability. Secondly, PMC and RIC note plaintiffs cite no legal or factual basis for strict liability based upon McMoran's alleged construction, manufacture and design of the ladder.

Movants are correct that Texas jurisprudence is controlling here so long as no conflict with federal law is presented. 43 U.S.C. § 1333(a)(2)(A). *See Rodrigue v. Aetna Cas. & Sur. Co.*, 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360 (1969). Accordingly, this court must apply the law as a Texas court would in determining what causes of action in strict liability, if any, plaintiffs may assert. *Gulf Offshore v. Mobil Oil Corp.*, 453 U.S. 473, 101 S.Ct. 2870, 69 L.Ed.2d 784 (1981), *on remand*, 628 S.W.2d 71 (Tex.Ct.App.1982); *Bourg v. Texaco Oil Co.*, 578 F.2d 1117, 1120 (5th Cir.1978).

Unlike Louisiana, Texas does not hold a landowner strictly or absolutely liable for accidents occurring on its premises. *Cf.* La.Civ.Code arts. 2317 and 2322. Instead, Texas applies general negligence principles in premises liability cases, *Corbin v. Safeway Store, Inc.*, 648 S.W.2d 292, 295 (Tex. 1983), with the owner/occupant's duty dependent upon plaintiff's status as invitee, licensee or trespasser. *See, e.g., State v. Tennison*, 509 S.W.2d 560 (Tex.1974); *Jannette v. Deprez*, 701 S.W.2d 56 (Tex.Ct. App.1985).

McMoran concedes Mr. Tolar was an invitee to its platform; its duty to him is determined under the principle set out by the Restatement (Second) Torts, § 343 (1965). *Adam Dante Corp. v. Sharpe*, 483 S.W.2d 452, 454–55 (Tex.1972) (adopting § 343 as the standard of care owed to an invitee by an occupier of premises). *See Birmingham v. Gulf Oil Corp.*, 516 S.W.2d 914 (Tex.1974) (defendant platform owner owed independent contractor's employee, as invitee, duty to take reasonable precautions to protect against foreseeable danger).

Plaintiffs have cited this court to no case law, nor has research disclosed any such case law, permitting the application of strict or absolute liability principles in a premises liability context governed by Tex-

as law. Plaintiffs contend, however, that the OCSLA provisions itself render McMoran as the lessee absolutely liable for injuries aboard the platform. This court agrees with PMC and RIC that this issue has been addressed by the Fifth Circuit in *Olsen v. Shell Oil Co.* and its progeny.

In *Olsen*, plaintiffs asserted defendant's violations of regulations promulgated by the Secretary of the Interior pursuant to OSCLA, 43 U.S.C. § 1334(a)(1), subjected it to strict liability. *Olsen*, 561 F.2d at 1182. The Fifth Circuit analyzed whether or not the breach of OCSLA regulations implied a civil cause of action. Following an examination of the factors enumerated in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), the Fifth Circuit concluded the OCSLA did *not* create a new cause of action for breach of the Secretary of Interior's regulations. *Id.* at 1189. Instead, the court found Congress provided extensive civil remedies to persons working on the OCSLA by permitting such platform workers any remedy available under state law, 43 U.S.C. § 1333(a)(2), as well as coverage under the Longshore and Harbor Workers Compensation Act. *Id.* at 1188.

The Fifth Circuit has affirmed this analysis in *Bourg v. Texaco Oil Co., Inc.*, 578 F.2d 1117, 1119 (5th Cir.1978) and in *Creppel v. Shell Oil Co.*, 738 F.2d 699, 702 (5th Cir.1984), both holding that a breach of the Secretary's regulations do not provide a civil cause of action in strict or absolute liability. *Olsen and Bourg* specifically address violations of 30 C.F.R. § 250.45 and all three cases consider violations of 30 C.F.R. § 250.46. While these cases do not specifically address a violation of 33 C.F.R. § 142.1 or the OCSLA amendments cited by plaintiffs, 43 U.S.C. § 1347(b) [1] and § 1348(b) [2], this court believes the principle articulated in *Olsen* is equally applicable here. Plaintiffs have not addressed or distinguished *Olsen* or offered contrary authority.

Neither section expressly imposes strict or absolute liability on the lessee or creates a private right of action for lessee violations. *Cf.* 43 U.S.C. § 1349 (permitting citizen's suits to enforce compliance with OCSLA provisions). "[T]he Act allows a plaintiff any type of negligence, strict liability or contract action which would be cognizable under state law," *Bourg*, 578 F.2d at 1120, but does not create a cause of action as suggested by plaintiffs. Because Texas law does not recognize and the OCSLA does not create strict premises liability, plaintiffs' cause of action on that basis must fall.

■ Finally, plaintiffs allege their cause of action remains viable under Texas' law of strict products liability. Assuming *arguendo* there exists a factual basis for this claim, plaintiffs' allegations lack a legal basis. Texas has adopted the rule espoused by the Restatement (Second) of Torts § 402A (1965). *McKisson v. Sales Affiliates, Inc.*, 416 S.W.2d 787 (Tex.1967). Section 402A requires the seller of the defective product to be "engaged in business of selling such a product" for its application. Accordingly, Texas applies strict products liability to manufacturers and distributors of products only. *E.g., Shivers v. Good Shepherd Hospital, Inc.*, 427 S.W.2d 104 (Tex.Ct.App.1968). Here, there are no allegations or indication that McMoran was engaged in the manufacturing or distribution or sale of crane ladders or that it placed this particular ladder into the stream of commerce. Thus, there is no legal basis for the application of strict products liability as it is recognized in Texas jurisprudence.

Lastly, we note that in determining the care required of a manufacturer in the design and construction of its product Texas applies negligence principles in accordance with the Restatement (Second) of Torts §§ 395, 398 (1965). *Syrie v. Knoll*

---

1. Section 1347 mandates the promulgation of safety and health regulations in order to promote safety and health in OCS exploration, development and production.

2. Section 1348 provides for enforcement of OCSLA safety and environmental regulations by the Secretary of the Interior, the Secretary of

the Army and the Secretary of the Department in which the Coast Guard operates, including onsite investigation, public reports, review of alleged violations, required reports to Congress and the power to summon witnesses and require production of evidence.

*Int'l,* 748 F.2d 304, 307 (5th Cir.1984) (citations omitted). Plaintiffs cannot assert a strict liability cause of action against McMoran for its alleged defective design and construction of the ladder.

This court concludes plaintiffs' strict liability claim against McMoran is unsupportable in law.

### JUDGMENT

For the written reasons assigned in the Memorandum Ruling of this date:

IT IS ORDERED that third-party defendant First Horizon Insurance Company's motion for summary judgment is GRANTED and plaintiffs' claim against Petro–Marine Engineering, Inc. is DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that defendant McMoran Offshore Production Company's motion for partial summary judgment is GRANTED and plaintiffs' claim based upon strict liability is DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that third-party defendants', Production Management Corporation and Reliance Insurance Company, motion for partial summary judgment is GRANTED and third-party plaintiff McMoran Offshore Production Company's claim for indemnity or contribution based upon strict liability is DISMISSED WITH PREJUDICE.