**Paul BOYER, D/B/A Born Again Auto Sales, Appellant,**

v.

**Bill E. SCRUGGS, Jr., Appellee.**

**No. 13–90–427–CV.**

Court of Appeals of Texas,
Corpus Christi.

March 28, 1991.

Kemper Stephen Williams, III, Cullen, Carsner, Seerden & Cullen, Victoria, for appellant.

David C. Griffin, Houston, Marek & Griffin, Port Lavaca, Cynthia T. Sheppard, Houston, Marek & Griffin, Victoria, for appellee.

Before NYE, C.J., and BENAVIDES, and HINOJOSA, JJ.

## OPINION

NYE, Chief Justice.

This is a premises liability case. Paul Boyer, individually and doing business as Born Again Auto Sales (Auto Sales), appeals the jury's findings in favor of appellee, Bill Scruggs, for injuries Scruggs sustained while on the Auto Sales premises. Appellant asserts six points of error. We affirm.

At the time of his injury, appellee worked as a mechanic for a Texaco service station in Victoria, Texas. Appellee testified that he visited the Auto Sales lot, while in the course of his employment, to collect payment for his repair of a van owned by Auto Sales. While inside the Auto Sales office, appellee conversed with Cynthia Livasy, his former girlfriend. He stated that Livasy pushed him into the front door of the Auto Sales office causing him to break the door's glass window and injure his left arm. Appellee testified that the glass in question did not shatter, rather, it broke in jagged edges, "like knives."

Appellant testified that he did not know what type of glass was in the Auto Sales entry doors. Later, he stated that the window was evidently filled with plate glass. He testified that the City, the bank, and his insurance company inspected the building before he purchased it. Earlier, he stated in his deposition that no safety inspections were performed other than "the fire and safety people ... telling [him] how many fire extinguishers [he] needed to keep full and where [he] needs to keep them placed."

Robert Wycoff, a licensed consulting engineer, testified about the use of different types of glass installed in buildings. Two types of glass are used in commercial buildings, namely, plate glass of varying thicknesses or safety glass, whether tempered or laminated. The most popular safety glass is tempered glass because it is designed to break into small particles. In contrast, plate glass breaks into large, sometimes dagger-like pieces. Safety glass is used to reduce the danger of being cut should the glass break. By statute, all safety glass must have a permanently affixed label identifying it as safety glass. Plate glass has no permanent label requirement.

Engineer Wycoff believed that appellee was injured by plate glass. He based his opinion upon his conversations with appellee's counsel as well as his examination of a letter by Dr. Pena, one of appellee's physicians, who described how appellee's injury occurred and the extent of his injuries. Although he did not see the broken glass in question, Wycoff believed that the depth and extent of the wound could not have been caused by safety glass.

Wycoff also testified that the Standard Building Code adopted by the City of Victoria required that safety glass be used in doors and in areas installed with glass within forty-eight inches of a door. This code requirement was effective at the time of appellee's injury and remained effective at the time of trial. Since appellant's building was constructed before the City enacted the safety glass requirement (in areas at or near points of entry to businesses), appellant was not required to have safety glass by virtue of a "grandfather clause."

The City now classifies entry doors with windows in them as "hazardous locations." If a window did not have a sticker affixed to it, he would assume that it was not safety glass.

Wycoff opined that it was dangerous to have a plate glass window in the entry door of a business. This is so because it is foreseeable that a person could either be pushed or stumble and fall into the glass or push their hand against the window to open the door, thus breaking the glass. Broken safety glass will cause small, minor cuts, but broken plate glass will cause much larger injuries. Wycoff concluded that a reasonably prudent business owner moving into an older building would have it inspected for safety to protect the public and himself.

Elmer Chappell, a safety consultant, inspected the windows and doors at the Auto Sales office after appellee's injury. He stated that reinforced glass should have been installed in the windows in the doors. Further, even though not required by law, safety glass should be installed in every door which was used in the same manner as the front door at Auto Sales. He was of the opinion that it was much more dangerous to have plate glass in a window or door than safety glass. The front door at Auto Sales was a high-traffic area and plate glass windows heightened the possibility of injury. Chappell stated that an owner was negligent if he maintained plate glass in an entry door because it was foreseeable that a person could put their arm through the glass. Based upon the description of appellee's injuries, he too believed that the window was plate glass.

The jury found that, on the occasion in question, the glass in the door of appellant's building presented an unreasonable risk of harm, that appellant should have discovered this unreasonable risk, that appellant was 70% negligent and appellee 30% negligent for the injury and that appellant should pay damages for appellee's past and future injuries.

By his fifth and first points of error, respectively, appellant asserts that the evidence was legally and factually insufficient to support the jury findings that appellee was an invitee and that the glass presented an unreasonable risk of harm. Appellant asserts by his third and fourth points of error, respectively, that the evidence is legally and factually insufficient to support the jury's award of past and future medical expenses and a finding that appellee suffered a loss of earning capacity.

In considering a "no evidence", "insufficient evidence", or an "against the great weight and preponderance of the evidence" point of error, we will follow the well-established tests set forth in *Pool v. Ford Motor, Co.*, 715 S.W.2d 629 (Tex.1986); *Dyson v. Olin Corp.*, 692 S.W.2d 456 (Tex.1985); *Glover v. Texas Gen. Indem. Co.*, 619 S.W.2d 400 (Tex.1981); *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965); *Allied Fin. Co. v. Garza*, 626 S.W.2d 120 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.); and Calvert, *No Evidence and Insufficient Evidence Points of Error*, 38 Tex.L.Rev. 361 (1960).

The duties owed by a landowner depend upon the role of the person injured. *Rosas v. Buddies Food Store*, 518 S.W.2d 534, 536 (Tex.1975); *Cameron County v. Velasquez*, 668 S.W.2d 776, 781 (Tex.App. —Corpus Christi 1984, writ ref'd n.r.e.); *see also Adam Dante Corp. v. Sharpe*, 483 S.W.2d 452, 454–55 (Tex.1972). An "invitee" is defined as a person who goes on the premises of another in answer to the express or implied invitation of the owner or occupant of the business of the owner or occupant or for their mutual advantage. *Atchison, Topeka and Santa Fe Ry. Co. v. Smith*, 563 S.W.2d 660, 666 (Tex.Civ.App. —Waco 1978, writ ref'd n.r.e.). A servant or employee of another person who enters the premises on the business of his master, in which business the master and the owner or occupant have a mutual interest, occupies the status of an invitee. *Atchison*, 563 S.W.2d at 666; *see also Rosas*, 518 S.W.2d at 536.

Appellee testified that he repaired a van bearing Auto Sales tags. For the Tex-

aco station to pay appellee for his work, appellee first had to obtain payment in full from the automobile owner. Appellee went to the Auto Sales office to collect the amount due Texaco for his work on the van. This is sufficient evidence for the jury to find in Question No. 1 that appellee was a business invitee at the time of his injury.

The owner of the premises owes a duty to the business invitee to keep the premises in a reasonably safe condition and to inspect the premises in order to discover any latent defects and to make safe any defects or give adequate warnings. *Adam Dante Corp.*, 483 S.W.2d at 454–55; *H.E. Butt Grocery Co. v. Godawa*, 763 S.W.2d 27, 29 (Tex.App.—Corpus Christi 1988, no writ); *H.E.B. Food Stores, Inc. v. Flores*, 661 S.W.2d 297, 299 (Tex.App.—Corpus Christi 1983, writ dism'd). A possessor of land is subject to liability for physical harm occurring on the land if he (1) knows or by the exercise of reasonable care should discover the dangerous condition, and should realize that it involves an unreasonable risk of harm to invitees, and (2) should expect that the invitees will not discover or realize the danger, or will fail to protect themselves against it, and (3) fails to exercise reasonable care to protect the invitees against the danger. *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 295 (Tex. 1983); *Physicians & Surgeons Gen. Hosp. v. Koblizek*, 752 S.W.2d 657, 658–59 (Tex. App.—Corpus Christi 1988, writ denied). Moreover, when an occupier of land has actual or constructive knowledge of any condition on the premises that presents an unreasonable risk of harm to invitees, he has a duty to take whatever action is reasonably prudent under the circumstances to reduce or eliminate the unreasonable risk from that condition. *Corbin*, 648 S.W.2d at 296; *Godawa*, 763 S.W.2d at 29; *Flores*, 661 S.W.2d at 299.

An invitee's suit against a store owner is a simple negligence action. *Corbin*, 648 S.W.2d at 295; *Parker v. Highland Park, Inc.*, 565 S.W.2d 512, 517 (Tex.1978); *Goda-wa*, 763 S.W.2d at 29; *Tanner v. BDK Prod. Co.*, 671 S.W.2d 941, 943–44 (Tex. App.—Corpus Christi 1984, no writ). The standard of conduct required of a premise occupier toward an invitee is the ordinary care that a reasonably prudent person would exercise under all relevant circumstances. Consequently, an occupier's liability to an invitee depends on whether he acted reasonably in light of what he knew or should have known about the risk accompanying the dangerous premises' condition, not whether a certain fact situation or a specific breach of duty is established. Therefore, as an invitee, appellee had to prove (1) that appellant had actual or constructive knowledge of some condition on the premises, (2) that the condition posed some unreasonable risk of harm to him, (3) that appellant did not exercise reasonable care to reduce or to eliminate the risk, and (4) that appellant's failure to use such care proximately caused appellee's personal injuries. *Hernandez v. Kroger Co.*, 711 S.W.2d 3, 4 (Tex.1986); *Corbin*, 648 S.W.2d at 296; *K–Mart Corp. v. Grebe*, 787 S.W.2d 122, 128 (Tex.App.—Corpus Christi 1990, writ denied); *Clark v. McFerrin*, 760 S.W.2d 822, 825 (Tex.App.—Corpus Christi 1988, writ denied).

Appellee testified that the glass broke into jagged pieces. The expert testimony offered by Wycoff and Chappell support the allegations that Auto Sales's entry door had plate glass in its window. After appellant's building was constructed, the City of Victoria classified areas with glass at or near an entry to a business as "hazardous" and required that the glass be safety glass. Both experts, Wycoff and Chappell believed that a business owner acted negligently by failing to have safety glass in the entry doors to his business.

Appellant argues that the Victoria Building Code requirements were not relevant to the disposition of the case because safety glass was not required at the time the building was built. A regulation not in existence at the time the plaintiff

was injured is irrelevant and inadmissible. *See Bell v. Buddies Super–Market,* 516 S.W.2d 447, 449 (Tex.Civ.App.—Tyler 1974, writ ref'd n.r.e.). But, the safety glass regulation existed when appellee was injured; thus, it was admissible and relevant to show what the current safety standards required of the applicable businesses in Victoria. Furthermore, appellant neither objected to the introduction of the relevant code regulations nor the discussion of the facts in relation to the regulations. Tex.R. App.P. 52. The evidence supports the jury's finding in Question No. 2 that the glass in the door of appellant's building presented an unreasonable risk of harm. Points one and five are overruled.

▬ This Court need not reach the merits of appellant's assertion that the evidence did not support the jury's findings regarding appellee's past and future medical expenses and loss of earning capacity because appellant waived error by his failure to request jury questions allowing for separate answers for these and the other elements of damages.[1] As submitted, Jury Question No. 7 allowed the jury to consider these two elements with three additional elements of damages. However, the jury was instructed to answer the question with a lump sum for compensation for past injuries and a lump sum for compensation for future injuries. Thus, it was unnecessary for the jury to designate which elements it used to award damages or how much each element contributed to total damages. Even if appellant was correct in saying that the evidence was insufficient to show medical expenses or loss of earning capaci-

ty, the amount of damages awarded could be sustained solely upon evidence of appellee's physical pain and mental anguish, disfigurement, and physical impairment. Appellant did not properly challenge the submission of this question; thus, he failed to preserve error. *See* Tex.R.Civ.P. 272, 273, 274. Points three and four are overruled.

▬ In his second point of error, appellant asserts that the trial court erred when it failed to grant a mistrial when the subject of insurance was discussed by a witness at trial. Our review of the record reveals that, while testifying on cross-examination, appellant volunteered, of his own initiative, the fact that he had liability insurance. Appellee's counsel then asked him several questions about the inspection his liability insurance carrier performed on the Auto Sales building before appellant's counsel objected.

To be considered on appeal, an objection to the admission of evidence must be made when the evidence is offered, not after it has been introduced. *Wenco, Inc. v. Nazario,* 783 S.W.2d 663, 665 (Tex.App.—El Paso 1989, no writ); *Commercial Union Ins. v. La Villa Indep. School Dist.,* 779 S.W.2d 102, 110 (Tex.App.—Corpus Christi 1989, no writ); *Montes v. Lazzara Shipyard,* 657 S.W.2d 886, 889 (Tex.App.—Corpus Christi 1983, no writ). Furthermore, the admission of improper evidence is waived when testimony to the same effect has been previously admitted without objection. *La Villa,* 779 S.W.2d at 110; *see Posner v. Dallas County Child Welfare,* 784 S.W.2d 585, 587 (Tex.App.—Eastland

1. Question No. 7 stated:
   You are instructed to consider the elements of damage listed below and none other. Consider each element separately. Do not include damages for one element in any other element.
   a. Physical pain and mental anguish.
   b. Loss of earning capacity.
   c. Disfigurement.
   d. Physical impairment.
   e. Medical care.
   Do not reduce the amounts, if any, in your answers because of the negligence, if any, of Bill Scruggs.

   A. What sum of money, if any, if paid now in cash, would fairly and personally compensate Bill Scruggs for his injuries that resulted from the occurrence in question that were sustained in the past? (Answer in dollars and cents, if any)
   Answer: *$18,000.00*
   B. What sum of money, if any, if paid now in cash, would fairly and personally compensate Bill Scruggs for his injuries that resulted from the occurrence in question that in reasonable probability will be sustained in the future. (Answer in dollars and cents, if any)
   Answer: *$70,000.00*

1990, writ denied); Tex.R.Civ.Evid. 103(a)(1), (b). Appellant's objections were not timely. Point two is overruled.

■ Appellant's sixth point of error asserts that the trial court erred when it included the instruction regarding an owner's duty of inspection with Question No. 3. Appellant asserts that the instruction is an improper comment on the weight of the evidence.

Question No. 3 stated:

Do you find that on the occasion in question Paul Boyer knew, or by the exercise of ordinary care, should have discovered that the glass in the door presented an unreasonable risk of harm?

You are instructed that the occupier or the owner of the property should have discovered any premises defects or other dangerous conditions that a reasonably careful inspection would reveal.

To constitute a comment on the weight of the evidence, the instruction must be worded so that it indicates the trial judge's opinion regarding the verity or accuracy of the facts in dispute. *See McDonald Transit, Inc. v. Moore*, 565 S.W.2d 43, 45 (Tex. 1978); *Bissett v. Texas Employers Ins. Ass'n*, 704 S.W.2d 335, 339 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.).

■ A trial court is given great discretion in the submission of jury instructions. *Wisenbarger v. Gonzales Warm Springs Hosp.*, 789 S.W.2d 688, 692 (Tex.App.—Corpus Christi 1990, writ denied); *Wakefield v. Bevly*, 704 S.W.2d 339, 350 (Tex.App.—Corpus Christi 1985, no writ); *Home Ins. Co. v. Gillum*, 680 S.W.2d 844, 849 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.); *see* Tex.R.Civ.P. 277. An instruction is proper if it finds support from the evidence and if it might assist the jury in answering the questions submitted. *Wisenbarger*, 789 S.W.2d at 692; *National Fire Ins. Co. v. Valero Energy Corp.*, 777 S.W.2d 501, 507 (Tex.App.—Corpus Christi 1989, writ denied); *Sappington v. Younger Transp. Inc.*, 758 S.W.2d 866, 867 (Tex.App.—Corpus Christi 1988, writ denied).

■ Where the duty to keep premises in a safe condition is imposed on a person in control of them, this duty may include the duty to inspect and discover dangerous conditions. *Genell, Inc. v. Flynn*, 358 S.W.2d 543, 546 (Tex.1962); *see also Clark*, 760 S.W.2d at 825; *Redinger v. Living, Inc.*, 689 S.W.2d 415, 417 (Tex.1985). As stated at the outset of this opinion, as an owner of the premises appellant had a duty to his business invitees to keep his premises in a reasonably safe condition and to inspect the premises in order to discover any latent defects and to make safe any defects or give adequate warnings. The instruction in question set forth that duty and ensured that the jury used a "reasonably careful inspection" standard.

■ Additionally, no judgment shall be reversed on appeal and a new trial ordered in any cause because the trial court committed an error of law during the trial unless the appellate court finds that such error denied appellant his rights and was reasonably calculated to cause and probably did cause rendition of an improper judgment. Tex.R.App.P. 81(b)(1). Even if it were error to submit such an instruction, we do not find that the instruction caused or was reasonably calculated to cause an improper verdict. *See Bryan v. Dockery*, 788 S.W.2d 447, 451 (Tex.App.—Houston [1st Dist.] 1990, no writ). The instructions did not assume a disputed fact and did not otherwise comment on the weight of the evidence. *See Lively Exploration Co. v. Valero Transmission Co.*, 751 S.W.2d 649, 653 (Tex.App.—San Antonio 1988, writ denied). Point six is overruled.

The trial court's judgment is AFFIRMED.