Michael CUNNINGHAM, Plaintiff,

v.

The UNITED STATES of America, Defendant.

No. SA–92–CA–417.

United States District Court, W.D. Texas, San Antonio Division.

May 7, 1993.

John Scott Roberts, Law Offices of Pat Maloney, P.C., San Antonio, TX, for plaintiff.

John F. Paniszczyn, U.S. Attys. Office, San Antonio, TX, for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

H.F. GARCIA, District Judge.

Plaintiff brings this action pursuant to the provisions of the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671, *et seq.* and 28 U.S.C. § 1346(b). It is alleged that agents, servants, and/or employees of the Defendant were negligent in failing to keep certain walkways well lit and clear of obstructions which resulted in personal injury to the plaintiff.

This case came on for trial before the Court on April 20, 1993. The Court having heard testimony and having considered the evidence, hereby enters the following findings of fact and conclusions of law.

### FINDINGS OF FACT

1. All jurisdictional prerequisites to suit have been met.

2. At all times material hereto, the United States Postal Service was an agency of the Defendant, United States of America. The United States of America, by and through its agency, the United States Postal Service, owned and operated the General Mail Facility (GMF) located on Perrin–Beitel Street, San Antonio, Texas.

3. The GMF is the main intake and out-take facility for the United States Postal Service (USPS) for the South Texas Region. Slot # 12 at the north loading dock at the GMF has a conveyor belt which assists in the off-loading of bulk mail into the postal facility. The GMF north loading dock is built at a height level with an average 18–wheel bed of a tractor trailer.

4. On Thursday, July 4, 1991 at approximately 2:30 a.m., Plaintiff, a part-time delivery driver for the San Antonio Light Newspaper came to the GMF to deliver bulk newspapers.

5. With Plaintiff was Joseph Johnson, another San Antonio Light Newspaper employee. Having performed the delivery of newspapers at the GMF on several previous occasions, Plaintiff was instructing Johnson as a new co-worker on the procedures for delivery of the newspapers at the GMF.

6. Plaintiff backed the San Antonio Light Newspaper truck up to the north loading dock of the GMF, slot # 12, to deliver morning newspapers. He proceeded to exit the truck and walk to its rear. Plaintiff opened the sliding overhead door of the truck and proceeded to off-load the bulk newspapers.

7. Upon completion of the off-loading task, Plaintiff stepped backwards off the dock and onto the rear bumper of the truck. He then stepped down from the rear bumper of the vehicle onto what he believed was the ground. Actually, he stepped on a wheel chock causing his ankle to give way. An injury to the ankle resulted. This tire chock, as well as numerous others, were chained to the dock area.

8. The Court finds that the credible evidence at trial established that the Defendant did not fail to keep the dock area adequately lit and/or free of obstructions.

9. The credible testimony established that the lighting was more than adequate to see obstacles on the parking lot and dock. Additionally, in response to a request by OSHA when investigating this incident, light

readings were taken at the north loading dock of the GMF and proved to meet applicable OSHA standards.

10. Tire chocks are triangular wedges of wood, rubber or similar hard material that are used as safety devices to prevent a truck or trailer from separating from the loading dock during loading and unloading. In an effort to avoid significant injuries to personnel unloading a truck, chocks are wedged under the rear tires of the vehicle. The chocks in question were chained adjacent to the dock for truck and trailer drivers' use when making a delivery or pick-up.

11. Should any of the foregoing findings of fact be more appropriately deemed findings on contested issues of law, they shall be so deemed.

## CONCLUSIONS OF LAW

1. The FTCA holds the United States liable for certain torts in the same manner and to the same extent as private individuals under similar circumstances in accordance with the law of the place where the act or omission occurred. As the injuries complained of occurred in Texas, Texas law applies.

2. The Occupational Safety and Health Administration, United States Department of Labor (OSHA) has promulgated safety standards and regulations relating to the use of wheel chocks. 29 C.F.R. § 1910.178(k)(7) provides that wheel chocks are to be used to prevent truck movement while loading or unloading.

3. This regulation is generally applicable to all non-governmental employment performed in the United States, including Plaintiff's employer. Here, the presence of wheel chocks was required to comply with safety regulations. The chocks were chained to the dock, extending the necessary distance to reach under the tires of vehicles likely to be used for loading and unloading at the dock. The Court finds it reasonable for the USPS to presume that drivers using the dock have been trained to chock wheels as an incident of employment.

4. Indeed, under Texas law, the USPS has no duty to see that an independent contractor performs his work in a safe manner. *Levrie v. Department of the Army,* 810 F.2d 1311 (5th Cir.1987). An owner of premises may assume that a contractor will perform his responsibility in a safe and workmanlike manner, taking proper care and precautions to assure the safety of his employees. *Corpus v. K–J Oil Co.,* 720 S.W.2d 672, 674 (Tex.App.–Austin 1986, writ ref'd n.r.e.). The San Antonio Light Newspaper had a non-delegable duty of providing safety rules and regulations to the Plaintiff and insuring that said rules were followed. *Burk Royalty Co. v. Walls,* 616 S.W.2d 911, 923–924 (Tex. 1981).

5. The factors to be determined in Texas for premises liability causes of action include: 1] actual or constructive knowledge of some condition on the premises by the owner/operator, 2] that the condition posed an unreasonable risk of harm, 3] the owner/operator did not exercise reasonable care to reduce or eliminate the risks, and 4] that the owner/operator's failure to use such care proximately caused the injuries in question. *Keetch v. Kroger Co.,* 845 S.W.2d 262 (Tex. 1992).

6. The Court finds that the USPS had no notice (actual or otherwise) of any condition on the premises that imposed any *unreasonable* risk of harm. Plaintiff has failed to establish that the wheel chocks presented an unreasonable risk of harm that should have been appreciated by the USPS. *H.E.B. Food Stores, Inc. v. Flores,* 661 S.W.2d 297, 299 (Tex.App.–Corpus Christi 1983, writ dism'd w.o.j.). Accordingly, there can be no finding that the USPS failed to eliminate any risk or that any failure resulted in injuries to another. It was entirely reasonable for the Defendant to presume that Plaintiff was aware of the presence of chocks so that safety regulations could be complied with.

7. *Assuming for argument only* that the presence of chocks *did* pose an unreasonable risk of harm; by attaching chain, the USPS did what it could to ensure that the chocks could only reach that distance necessary for proper chock use. The Court doubts that the presence of a chock receptacle would

provide a safer dock. Drivers failing to toss chocks to the edge of the dock when no longer using them, are not likely to make the effort to take advantage of a nearby receptacle. The law does not require the USPS to hold a vigil at the GMF dock to monitor compliance of outside employees with safety regulations.

8. To the extent that any of the foregoing conclusions of law may be more appropriately deemed findings of fact, they are so deemed.

\* \* \* \* \* \*

It is therefore ORDERED that the clerk enter judgment in favor of the United States in accordance with Fed.R.Civ.P., Rule 54, the Plaintiff to take nothing by way of his complaint.

So ORDERED.